UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN G. NEVARES,<br><br>    Plaintiff,<br><br>v.<br><br>SAN JOSE POLICE OFFICERS FLOSE, et al.,<br><br>    Defendants. | Case No. 23-cv-06278-VKD<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT; (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 36, 38 |

Plaintiff John G. Nevares, who is representing himself, filed this civil rights action pursuant to 42 U.S.C. § 1983 against San Jose Police Officers Travis Flosi[1] and Chase Brower. Dkt. No. 1. He claims that defendants unlawfully detained him and used excessive force in violation of his Fourth Amendment rights, and retaliated against him for exercising his First Amendment rights. *See id.* Officers Flosi and Brower move for summary judgment on all claims for relief. Dkt. No. 36. Although the Court gave Mr. Nevares an extended period of time to file a written response to defendants' summary judgment motion (*see* Dkt. No. 41), he did not do so. However, he appeared at the February 4, 2025 hearing to state his opposition to defendants' summary judgment motion. *See* Dkt. No. 43.

After defendants filed their summary judgment motion, Mr. Nevares separately moved for leave to amend his complaint. Dkt. No. 38. Defendants oppose that motion. Dkt. No. 42. The Court held a February 4, 2025 hearing on Mr. Nevares's motion. *See* Dkt. No. 43.

Upon consideration of the moving and responding papers, as well as the oral arguments

---

[1] Officer Flosi's name apparently is misspelled in the complaint.

presented, the Court denies Mr. Nevares's motion to amend his complaint and grants defendants' summary judgment motion.[2]

## I.   BACKGROUND

In his complaint, Mr. Nevares alleges that his request for government assistance "for medical [and] food on SSI" was denied.  Dkt. No. 1 at ECF 3.  He then "purchased water bas[ed] paint" and went to San Jose City Hall on June 29, 2022 "and painted the words Help with [his] name[,] number[,] [and] Internet access to [his] story."  *Id*. at ECF 4.  When security personnel arrived, Mr. Nevares says that he told them that he "was exercising [his] First Amendment [r]ights."  *Id*.  The complaint further alleges that "[a]fter repeated attac[k]s by security police officers," Mr. Nevares was arrested and charged with destruction of property.  *Id*.

The complaint further alleges that on the morning of August 12, 2022, Mr. Nevares was sitting in his truck at an "airport homeless camp" when Officers Flosi and Brower arrived.  *Id*. at ECF 5.  Mr. Nevares alleges that Officer Flosi called him out of his truck, and then "charge[d] at [Mr. Nevares,] slamming [him] against [his] truck and handcuffing [him]."  *Id*.  Mr. Nevares further alleges that Officer Flosi took him to Officer Flosi's vehicle, and "once again slammed [Mr. Nevares] into [Officer Flosi's] vehicle while Officer Brower searched [Mr. Nevares's] truck."  *Id*.  After Sergeant William arrived on the scene, Mr. Nevares says that he "called out for help" and told Sergeant William that he "was a mental patient."  *Id*.  Mr. Nevares says that Officer Flosi "then started to bend [his] wrist slowly until[] finally breaking [his] right wrist."  *Id*. at ECF 6.  "After breaking [Mr. Nevares's] wrist," Officer Flosi uncuffed him and allegedly told him that he "better stay away from City Hall."  *Id*.

According to defendants, on August 12, 2022, Officers Flosi and Brower were on the "walking beat assignment" in downtown San Jose, patrolling the area of Coleman Avenue and Vendome Street, along the Guadalupe River trail.  Dkt. No. 36-1 ¶¶ 2-4.  According to Officer Brower, "[t]here had been numerous citizen and business complaints about subjects camping in

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 12, 19.

the park, parking vehicles on the trail[,] and driving on the trail," and the "walking beat assignment was designated to improve the quality of life for businesses and civilians in the downtown area." *Id*. ¶¶ 4-5. On the morning in question, Officers Flosi and Brower were in their patrol vehicle, "contacting subjects who were camping along the Guadalupe River trail," which the officers say is a violation of the San Jose Municipal Code governing parks. *Id*. ¶ 5.

Officer Brower says he observed an older gray Chevrolet pickup truck parked next to a tent. Because the truck was parked on a landscaped area, Officer Brower says that the truck had to be driven on the park trail in order to get to that location. *Id*. ¶ 6. After the officers parked their patrol vehicle and approached the truck, an individual (later identified as Mr. Nevares) exited the truck. *Id*. ¶ 7. Officer Brower attests that neither he nor Officer Flosi had any prior contact with Mr. Nevares and were not aware of any other encounters he may have had with the San Jose Police Department. *Id*..

According to Officer Brower, Mr. Nevares "was visibly upset and agitated." *Id*. ¶ 8. When Officer Brower told Mr. Nevares that he was not allowed to camp in the park or to park his truck there, he says that Mr. Nevares yelled and told the officers that they were harassing him. *Id*. Mr. Nevares then tried to return to his truck, and the officers told him he could not do so. They later observed a knife in the truck. According to Officer Brower, Mr. Nevares refused to leave the park or identify himself, and asked to be taken to jail. *Id*. ¶ 9.

Mr. Nevares was then handcuffed and placed in the back of the officers' patrol vehicle while they completed their investigation. Officer Brower avers that "[a]t no time did we use any unnecessary force" or "any excessive force," "bend [Mr. Nevares's] wrists or slam him into his vehicle," or "do anything that would have caused him pain." *Id*. ¶¶ 11, 20. Officer Brower says that they "used only standard procedures to place the handcuffs on Mr. Nevares" and "checked to ensure the handcuffs were not too tight." *Id*. ¶¶ 11, 20. Although Mr. Nevares claimed at one point during the encounter that officers were twisting his wrist, defendants say that never happened. In support of their summary judgment motion, defendants submitted a video recorded by Officer Brower's body-worn camera. They contend that the video confirms that there was no excessive force used during the encounter and that officers did nothing more than routine placing

of handcuffs on Mr. Nevares and checking them to make sure they were properly fitted. *Id*. ¶¶ 4, 11, 20 & Ex. A.

Officers checked Mr. Nevares's pockets for weapons and found his wallet containing information identifying him as John Nevares, which defendants say they confirmed through a department-approved database. *Id* ¶ 12.

Officer Brower says that after a few minutes, he spoke with Mr. Nevares, who became calmer. Officer Brower avers that he told Mr. Nevares that he could not camp in that area of the Guadalupe River trail, noting that the rules are posted on signs. Officer Brower also told Mr. Nevares that he could not park his truck in the park or on dirt areas because it damaged the property. *Id*. ¶ 15. According to Officer Brower, Mr. Nevares said that he understood and would try to move in a couple of days. *Id*. ¶ 16. Officer Brower took photos of Mr. Nevares's tent, a fire pit, and his truck and says that Mr. Nevares admitted that he had been camping in the park for about two days. *Id*. ¶ 17.

The officers gave Mr. Nevares a citation for violation of San Jose Municipal Code section 13.44.020, as well as a parking citation. *Id*. ¶ 18 & Ex. B. Officer Brower notes that Mr. Nevares did not complain of any pain when he signed the citations with his right hand. *Id*. ¶ 21. Mr. Nevares was then released. *Id*.

In the present lawsuit, Mr. Nevares claims that Officers Flosi and Brower unlawfully detained him and used excessive force in violation of his Fourth Amendment rights, and also retaliated against him for exercising his First Amendment rights. *See* Dkt. No. 1 at ECF 7, 8. Defendants move for summary judgment arguing that they had reasonable suspicion and probable cause to detain and/or arrest Mr. Nevares and that no excessive force was used. Additionally, defendants maintain that there is no evidence that they retaliated against Mr. Nevares for exercising any First Amendment right. Defendants also contend that they are entitled to qualified immunity, arguing that they did not violate any clearly established right in handcuffing Mr. Nevares, or in detaining him and giving him a citation for violations of the San Jose Municipal Code. As noted above, Mr. Nevares separately moves to amend his complaint.

## II. DISCUSSION

### A. Mr. Nevares's Motion to Amend the Complaint

Rule 15(a) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is committed to the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). When considering whether to grant leave to amend, a court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[P]rejudice to the opposing party . . . carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id*.

Mr. Nevares's proposed amended complaint indicates that he wishes to now name a number of additional defendants (including several other officers and two judges), as well as an additional claim for "Conspiracy to commit Retaliation/Bodily harm" under the "First and Fourth Amendments." *See* Dkt. No. 39. Although his proposed amended complaint is somewhat difficult to parse, Mr. Nevares's additional allegations and claims appear to concern other events, beyond the August 12, 2022 encounter at issue, that occurred at various different locations, on different dates, and under multiple different circumstances. *See id*. Mr. Nevares's requested amendment to add these other persons and events to the present lawsuit was made after defendants filed their summary judgment motion, and well after the November 1, 2024 close of fact discovery. His delay in seeking this amendment would undoubtedly require service on additional parties and re-opening discovery. Such an amendment would entirely derail the case schedule set nearly one year ago. Notwithstanding Mr. Nevares's self-represented status, this is not reasonable. Allowing the requested amendment would also be prejudicial to the two defendants who have litigated this matter for over a year.

Accordingly, Mr. Nevares's motion for leave to file his amended complaint is denied. The

United States District Court
Northern District of California

1  denial is without prejudice to Mr. Nevares to consider whether he may have a basis to assert
2  additional claims in a separate lawsuit(s).  In so ruling, however, the Court expresses no opinion
3  about the merits or viability of any additional claims Mr. Nevares wishes to assert.

### B.  Defendants' Motion for Summary Judgment

#### 1.  Legal Standard

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See id*. at 1103.  The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id*.  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248-49.

#### 2.  Fourth Amendment Claim

Mr. Nevares claims that Officers Flosi and Brower "unlawfully detained [and] searched" him and also "used excessive force against [him] and broke [his] [w]rist."  Dkt. No. 1 at ECF 8. Defendants argue that they were justified in detaining Mr. Nevares and that no excessive force was used during the August 12, 2022 encounter.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

1    Government, and its protections extend to brief investigatory stops of persons or vehicles that fall
2    short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v.*
3    *Ohio*, 392 U.S. 1, 9, (1968)).  Thus, "police can stop and briefly detain a person for investigative
4    purposes if the officer has a reasonable suspicion supported by articulable facts that criminal
5    activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490
6    U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30).  "That level of suspicion is considerably less than
7    proof of wrongdoing by a preponderance of the evidence, . . . and the level of suspicion required
8    for a *Terry* stop is obviously less demanding than that for probable cause." *Id*.  In making
9    reasonable-suspicion determinations, reviewing courts "must look at the 'totality of the
10   circumstances' of each case to see whether the detaining officer has a particularized and objective
11   basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273; *see also United States v. Cortez*,
12   449 U.S. 411, 417 (1981) (stating that "the totality of the circumstances—the whole picture—must
13   be taken into account" when determining if an officer had reasonable suspicion to perform an
14   investigatory stop).

15   Excessive force claims which arise in the context of an arrest or investigatory stop are
16   analyzed under the Fourth Amendment reasonableness standard. *See Graham v. Connor*, 490 U.S.
17   386, 394-95 (1989).  "The 'reasonableness' of a particular use of force must be judged from the
18   perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."
19   *Id*. at 396.

20   In the present case, the record reveals no genuine issues of material fact that the defendant
21   officers had reasonable suspicion for stopping Mr. Nevares and detaining him while they
22   conducted their investigation.  The video evidence submitted by defendants corroborates Officer
23   Brower's declaration concerning the August 12, 2022 encounter.  The video shows: Mr. Nevares's
24   vehicle was parked on a landscaped area of the park, next to a tent; when the officers approached
25   him, Mr. Nevares became visibly agitated and upset and refused to identify himself; and Mr.
26   Nevares acknowledged that he had been camping at the park for a couple of days.  Under the
27   particular circumstances presented, the officers' detention of Mr. Nevares was not unlawful and
28   did not extend beyond the time reasonably necessary to effectively speak with Mr. Nevares, verify

7

his identity, investigate the situation, and determine whether and what citation(s) should be issued. *See* Dkt. No. 36-1 & Ex. A; *see also generally Rodriguez v. United States*, 575 U.S. 348, 355 (2015) ("Beyond determining whether to issue a traffic ticket," inquiries incident to a traffic stop typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."); *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) ("To be lawful, a traffic stop must be limited in its scope: an officer may 'address the traffic violation that warranted the stop,' make 'ordinary inquiries incident to the traffic stop,' and 'attend to related safety concerns.'") (quoting *Rodriguez*, 575 U.S. at 354-55).

Mr. Nevares maintains that defendants repeatedly "slammed" him against vehicles and "ben[t] [his] [right] wrist" until it broke. *See* Dkt. No. 1 at ECF 5-6. Even viewing the record in a light most favorable to Mr. Nevares, and drawing all reasonable inferences in his favor, his allegations of excessive force are unsupported. The footage from Officer Brower's body-worn camera supports defendants' contention that no one slammed Mr. Nevares into any vehicle (or anything else) and no one twisted his wrist. Indeed, the video indicates that no one engaged in any conduct that a trier of fact reasonably could conclude constituted excessive force. *See* Dkt. No. 36-1 & Ex. A.

Although Mr. Nevares appeared at the motion hearing to state his opposition to defendants' summary judgment motion, when asked about the basis for his opposition, he referred to other matters. *See* Dkt. No. 43. As noted above, Mr. Nevares did not file a written response or make an evidentiary submission in response to defendants' summary judgment motion.

On this record, the Court finds that there are no genuine issues of material fact to be tried, and that defendants are entitled to summary judgment on Mr. Nevares's Fourth Amendment claim.

### 3. First Amendment Claim

Mr. Nevares claims that Officers Flosi and Brower "[h]arassed and injured [him] as retaliation for exercising [his] [F]irst Amendment [r]ights, i.e., painting a message on San Jose City Hall, noting that he "was told expressly to stay away from City Hall." Dkt. No. 1 at ECF 4, 7. Defendants contend that there is no evidence that Mr. Nevares engaged in any protected

8

1    activity under the First Amendment, much less that any of the defendants retaliated against him
2    for engaging in such activity. *See* Dkt. No. 36 at ECF 11.

3          A plaintiff claiming First Amendment retaliation must establish facts showing that (1) he
4    was engaged in a constitutionally protected activity; (2) the defendants' actions would chill a
5    person of ordinary firmness from continuing to engage in the protected activity; and (3) the
6    protected activity was a substantial or motivating factor in the defendants' conduct. *O'Brien v.*
7    *Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citations omitted). "As a general matter the First
8    Amendment prohibits government officials from subjecting an individual to retaliatory actions for
9    engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up;
10   quotations and citation omitted). "To prevail on such a claim, a plaintiff must establish a 'causal
11   connection' between the government defendant's 'retaliatory animus' and the plaintiff's
12   'subsequent injury.'" *Id*. (citation omitted). "It is not enough to show that an official acted with a
13   retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id*.
14   "Specifically," a plaintiff must show that a retaliatory motive was the "'but-for' cause, meaning
15   that the adverse action against the plaintiff would not have been taken absent the retaliatory
16   motive." *Id*. at 399; *see also Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022) (describing
17   "but-for" test in First Amendment retaliation context).

18         Even assuming, without deciding, that Mr. Nevares was engaged in protected activity
19   under the First Amendment when he painted a message on City Hall on June 29, 2022, he has
20   presented no evidence to support the causation element of his First Amendment retaliation claim.
21   There is no indication that either Officer Flosi or Officer Brower were involved in Mr. Nevares's
22   prior alleged encounter with "security police officers" at City Hall on June 29, 2022, or that they
23   even knew of that incident. *See* Dkt. No. 1 at ECF 4. Although Officer Brower's body-worn
24   camera footage indicates that the defendant officers drove past Mr. Nevares's vehicle on prior
25   patrols of the Guadalupe trail area (*see* Dkt. No. 36-1, Ex. A), Officer Brower attests that as of
26   August 12, 2022, neither he nor Officer Flosi "had any contact with [Mr. Nevares] previously"
27   and they "were not aware of any other encounters he may have had with . . . the San Jose Police
28   Department." Dkt. No. 36-1 ¶ 7. Mr. Nevares has presented no evidence or argument to the

1 contrary. Additionally, the body-worn camera footage submitted by defendants indicates that during the August 12, 2022 encounter, no one told Mr. Nevares to "stay away from City Hall" or any words to that effect. *See* Dkt. No. 36-1, Ex. A.

On this record, the Court finds that there are no genuine issues of material fact to be tried, and that defendants are entitled to summary judgment on Mr. Nevares's First Amendment claim.[3]

### III. CONCLUSION

Based on the foregoing, the Court grants defendants' motion for summary judgment and denies Mr. Nevares's motion to amend his complaint. The Clerk of Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: May 1, 2025

Virginia K. DeMarchi
United States Magistrate Judge

---

[3] Because the Court concludes that defendants did not violate Mr. Nevares's First or Fourth Amendment rights, disposing of the claims against them, the Court does not reach the issue of qualified immunity.